IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TANGELA LEVELS and BYRON LEVELS, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:11-cv-3434-M-BN |
| ANDREW P. MERLINO and LYNNE MERLINO, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management, including determination of Defendants' motion for summary judgment, pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation.

**Procedural Background**

Plaintiffs filed this lawsuit in Texas state court on December 2, 2011, alleging several causes of action. *See* Dkt. No. 1-1 at 2-7. Defendants properly removed the case on December 12, 2011. *See* Dkt. No. 1. Defendants then brought a counterclaim against Plaintiffs, alleging breach of contract and malicious civil prosecution and seeking exemplary damages. *See* Dkt. No. 19 at 5-7. Plaintiffs twice amended their complaint, with their Second Amended Complaint alleging negligence, conversion, common law

-1-

and statutory fraud, negligent misrepresentation, violations of the Texas Finance Code, violations of the Truth in Lending Act ("TILA"), violations of the Real Estate Settlement Procedures Act ("RESPA"), breach of contract, and wrongful foreclosure. *See* Dkt. No. 31 at 8-13.

Defendants moved for summary judgment on all of Plaintiffs' claims. *See* Defendants' Motion for Summary Judgment on Plaintiffs' Claims ("Motion") [Dkt. No. 40]. Plaintiffs filed their Response and Brief in Opposition ("Response"), *see* Dkt. No. 50, and Defendants filed their Reply to Plaintiffs' Amended Response ("Reply"), *see* Dkt. No. 51.

## Objections to Summary Judgment Evidence

Before considering the substantive merits of Defendants' Motion, the Court first notes that Defendants have objected to portions of Plaintiffs' summary judgment evidence. Dkt. No. 51. As a matter of efficiency, the undersigned will only take up the objections to evidence on which the Court relies on in making the recommendation on Defendants' Motion. At the time that the undersigned relies on evidence to which Defendants object, the objections will be considered. If evidence is relied on and the objection was not discussed, the undersigned considered both the evidence proffered and Defendants' objections, and to the extent the undersigned regarded portions of the evidence as relevant, admissible, and necessary to the resolution of particular summary judgment issues, overruled those objections. To the extent the undersigned did not rely on other evidence about which Defendants complain, the objections are denied as moot.

## Factual Background and Allegations

This is a case involving a seller (or owner) financed home purchase that went wrong. The property at issue is located in Dallas, Texas (the "Property"). Dkt. No. 1-1 at 2. The summary judgment evidence, when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiffs as the nonmoving party and all disputed factual controversies are resolved in Plaintiffs' favor, shows the following.

On April 7, 2004, Defendants Andrew and Lynne Merlino ("Defendants" or "Merlinos") sold the Property to Plaintiffs Byron and Tangela Levels ("Plaintiffs" or "Levels"). *See* Dkt. Nos. 40 at 5-6 & 50 at 3-4. Plaintiffs first inquired into the Property as a rental property but ultimately decided to purchase the home through owner financing. *See* Dkt. No. 50-1 at 30 (¶ 3). Plaintiffs were at least considering using the Property as an in-home daycare at the time of purchase. On April 7, 2004, the parties entered into a Real Estate Lien Note (the "Note") on April 7, 2004, in the amount of $333,000.00, with an annual interest rate of 6.0%. Dkt. No. 40-1 at 2. The terms of payment under the Note were as follows: "Principal and interest are payable in monthly installments of ... $1,996.50 each on or before the 1st day of each month. Payments shall commence on or before April 7, 2004 and continue until principal and interest have been paid, but the final payment of any remaining principal and interest is payable on or before March 7, 2007." *Id.* at 3. The Note was secured by an interest in the Property. *See id.*

Plaintiffs state that at the time of signing, Defendants provided them with a

30-year amortization schedule at an interest rate of six percent. *See* Dkt. 50-1 at 31 (¶ 5). This amortization schedule is not included in the summary judgment evidence.[1]

On May 15, 2007, the parties entered into a "Modification of Note and Deed of Trust" ("First Modification"), wherein the parties agreed that the "note will be amortized over thirty years at 8% interest" with monthly payments due "until May 10, 2008 when the entire balance is due and payable." Dkt. No. 40-2. The First Modification also provided Plaintiffs with the option "to apply $30,000.00 in principal and at which point interest will be changed to 9% and amortize remaining balance over 30 years and note will [be] due and payable on May 10, 2009," rather than paying the balance in full on May 10, 2008. *Id.*

Plaintiffs allege that Defendants again provided them with a 30-year amortization schedule when the parties signed the First Modification. *See* Dkt. No. 50-1 at 32-33 (¶ 17). This Amortization Schedule was attached as an exhibit to Plaintiffs' state court petition but was not attached as summary judgment evidence. *See* Dkt. No. 1-1 at 13. Defendant Andrew Merlino testified that does not recall whether Defendants provided this Amortization Schedule to Plaintiffs. *See* Dkt. No. 50-1 at 7. Plaintiffs state that they received a HUD-1 Settlement Statement at closing and therefore were under the impression that the parties "would be bound by all

---

[1] Defendant object to this statement in Tangela Levels's affidavit on the grounds that it is a bare conclusory statement and in violation of the best evidence rule. *See* Dkt. No. 51 at 8. The undersigned acknowledges that a copy of the schedule is not included in the summary judgment evidence and otherwise concludes that Defendants' objections are meritless and therefore overrules them.

obligations" that might apply under HUD. Dkt. No. 50-1 at 34 (¶ 27).

On June 25, 2010, the parties entered into the "Modification and Amendment Agreement" (the "Second Modification"),[2] wherein the parties expressed their desire to "modify the terms of the Note." Dkt. No. 40-3. Under the Second Modification, Plaintiffs promised to pay Defendants "principal and interest payment of $2,482.95 on the Base Principal at the rate of TEN PERCENT (10.0%) per annum beginning July 15, 2010 and continuing [monthly] until June 15, 2011, when the entire principal and interest is due and payable." *Id.*

Thus, while the language is somewhat varied in the Loan Agreements, in each, the terms were comprised of a monthly payment arrangement with a balloon payment at a set date when the loan would be due in full. As explained below, however, Plaintiffs take the position that the terms were actually dictated by the amortization schedules that demonstrate that the loan would be a 30-year loan.

By September 2011, Plaintiffs were delinquent on their payments under the Second Modification. *See* Dkt. No. 40-10 at 3. The events that transpired after that point are not entirely clear, but a foreclosure sale on the Property became set for December 6, 2011. *See* Dkt. No. 1-1 at 7. On December 2, 2011, Plaintiffs filed a Petition in state court, alleging several causes of action and requesting a temporary and permanent injunction. *See* Dkt. No. 1-1 at 2. The state court entered the temporary restraining order ("TRO"), enjoining the scheduled foreclosure of the Property for 14

---

[2] The Note, First Modification, and Second Modification, collectively, will hereafter be referred to as the "Loan Agreements."

days and setting the TRO for hearing. *See id.* at 22-23.

Neither party explains the process by which the foreclosure occurred, but Defendants foreclosed on the Property on March 6, 2012. *See* Dkt. No 50-1 at 35 (¶ 31); Dkt. No. 40-4 at 13. Byron Levels testified via affidavit that he did not receive a copy of the Notice of Sale 21 days before the foreclosure. *See* Dkt. No. 50-1 at 43 (¶ 4).[3]

Plaintiffs allege that Defendants repeatedly told them the mortgage was a 30-year mortgage and that based upon Defendants' alleged statements they entered into the Loan Agreements. *See* Dkt. No. 50-1 at 32-33 (¶¶ 17-20).[4] Plaintiffs assert that Defendants made additional misrepresentations and that, based on these alleged misrepresentations, Plaintiffs did not seek alternative financing arrangements. *See* Dkt. No. 50-1 at 34 (¶ 25).

In addition to the above alleged misrepresentations, Plaintiffs raise other complaints related to Defendants' handling of the loan. More specifically, Plaintiffs claim the following actions by Defendants constituted Defendants' mismanagement of the loan: (1) Defendants were at times unable to inform Plaintiffs as to what their

---

[3] Defendants object to this statement in Byron Levels' affidavit on the grounds that it lacks foundation and is a conclusory allegation. The undersigned overrules these objections.

[4] Defendants object to Paragraphs 17 and 20 of Tangela Levels's affidavit as hearsay. The undersigned is not relying on these statements in this Section as summary judgment evidence but rather as helpful in stating Plaintiffs' claims and allegations. That said, to the extent that the undersigned's analysis and recommendation do rely on these statements, the undersigned overrules Defendants' objections. The undersigned understands that Plaintiffs are not offering the statements for the truth of the matter asserted – that the loan was a 30-year loan – but rather that Defendants made such statements and Plaintiffs relied on them.

payment amounts were or how much Plaintiffs had paid into escrow for taxes and insurance; (2) Defendants would tell Plaintiffs the wrong payment amounts due; and (3) Defendants failed, in general, to accurately keep track of the mortgage note amounts paid and due, as evidenced by an email sent by Defendants to Plaintiffs. *See* Dkt. No. 50-1 at 9-12; Dkt. No. 31 at 4.[5] Plaintiffs also contend that Defendants failed to provide them with a Truth in Lending Statement as well as a Good Faith Estimate, as allegedly required under federal law. *See* Dkt. No. 31 at 4. Plaintiffs claim that Defendants "have made several disparaging statements regarding Plaintiffs and the Property" and that such statements have been made to credit bureaus and in the Property Records. Dkt. No. 31 at 7; Dkt. No. 50-1 at 35 (¶ 28). Plaintiffs claim that as a result of all of Defendants' acts, they have been damaged in several ways, including economic and financial losses and various personal injuries. *See* Dkt. No. 31 at 7.

Plaintiffs claim that Defendants provided them with advice and offered to walk Plaintiffs through the entire process and that, as a result of these interactions, there was a "special relationship" between the parties. *See* Dkt. No. 31 at 2; Dkt. No. 50-1 at 30 (¶ 3). Indeed, Plaintiffs go so far as to say there was a shared trust between the parties as well as an imbalance of power in Defendants' favor. *See* Dkt. No. 31 at 2-3; *See* Dkt. No. 50-1 at 30 (¶ 3).

The transaction with Plaintiffs to sell the Property was the first

---

[5] To the extent that the undersigned cites to Plaintiffs' Second Amended Complaint, the undersigned is not using the Complaint as evidence to support the conclusions herein but rather relying on it as a vehicle for recounting Plaintiffs' allegations and claims.

"owner-financed" property sale in which Defendants have participated. Dkt. No. 40-12 at 3 (¶ 5). Defendants have not originated any mortgages, other than the one at issue, nor have they extended consumer credit to a consumer more than 25 times in any year. *See id.* Defendants did not intend to sell the Note to "the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or any financial institution." *Id.* (¶ 6). The Note is "not insured, guaranteed, supplemented, or assisted in any way, by the Secretary of Housing or any other officer or agency of the federal government" nor is it "under or in connection with a housing or urban development program administered by ... any ... officer or agency of the federal government." *Id.* (¶ 7).

### Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the

nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The"beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While the Local Rules in this district do not require the parties to submit

statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

## Analysis

### A.   Negligence

Under Texas law, a plaintiff must prove the following four elements to successfully assert a negligence claim: "(1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1993).

Plaintiffs assert several theories as the basis for their negligence claims. Specifically, Plaintiffs claim that HUD and RESPA regulations were incorporated into the Loan Agreements and that Defendants therefore owed Plaintiffs a duty under those regulations or that, alternatively, even if no duty exists under HUD or RESPA, a "special relationship" existed between Defendants and Plaintiffs, which gives rise to a duty Defendants owed to Plaintiffs.[6] *See* Dkt. No. 31 at 8-9; Dkt. No. 50 at 5. Under both theories, the alleged breach of Defendants' duty was Defendants' mismanagement of the loan and related funds. *See id.* Plaintiffs contend that, as a result of Defendants'

---

[6] The undersigned notes that the latter theory was not pleaded in Plaintiffs' Second Amended Complaint. Because Defendants had an opportunity to respond to this theory in their Reply brief, and did so, the undersigned will address it in analyzing whether summary judgment is appropriate.

breach, Plaintiff experienced economic losses, harm to their credit, clouded title, mental anguish, emotional distress, anxiety, depression, humiliation, loss of their time, and loss of access to their financial resources. *See* Dkt. No. 31 at 9. Defendants claim that no duty exists as a matter of law under either of the theories that Plaintiffs advance, *see* Dkt. No. 40 at 7-9; Dkt. No. 51 at 14, and that, even if a duty did exist, Plaintiffs' negligence claim is barred by the economic loss rule and their mental anguish and emotional distress damages are also not recoverable, *see* Dkt. No. 40 at 8-9.

1.   No Duty Exists under HUD or RESPA Regulations

Plaintiffs claim that Defendants owed them a duty and that Defendants breached that duty by mismanaging Plaintiff's loan. *See* Dkt. No. 31 at 8-9. Defendants argue that neither HUD nor RESPA were specifically incorporated into the Loan Agreements to give rise to any duty and that they therefore owed no duty to Plaintiffs. *See* Dkt. No. 40 at 6-8 & Dkt. No. 51 at 13-14.

As a general rule, Texas does not recognize a fiduciary duty between a mortgagor and mortgagee. *See Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990); *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302-03 (Tex. App. – Amarillo 1988, writ denied). Plaintiffs claim that an exception to that rule exists where the loan agreement incorporates the HUD regulations. *See* Dkt. No. 31 at 8. Plaintiffs rely on *Cavil v. Trendmaker Homes, Inc.*, Civ. No. G-10-304, 2010 WL 5464238 (S.D. Tex. Dec. 29, 2010), to support their position. *See* Dkt. No. 31 at 8. In *Cavil*, the court denied a motion to dismiss the plaintiff's negligence claim because the

plaintiff alleged that the loan agreement specifically incorporated the HUD regulations, that the defendants had certain duties under these regulations, and that the defendants breached those duties. *See Cavil*, 2010 WL 5464238, at *7. The *Cavil* court concluded that the plaintiff has properly alleged a negligence claim. *See id.*

A review of the Loan Agreements in this case reveals no mention or specific incorporation of HUD or RESPA regulations. Without a specific incorporation of HUD or RESPA, the exception expressed in *Cavil* does not apply. Rather, the general rule applies, and no duty exists. Here, the regulations were not mentioned or incorporated in the Loan Agreements, and Plaintiffs do not even allege otherwise. Instead, Plaintiffs argue that, because they received a HUD Settlement Statement at closing, *see* Dkt. No. 50-1 at 34 (¶ 27), the regulations were incorporated into the Loan Agreements, *see* Dkt. No. 50 at 4-5. Notably, Plaintiffs did not include the document in their summary judgment evidence; rather, they only reference it in their affidavits.

Even assuming that Plaintiffs did receive a HUD Settlement Statement, however, this fact does not bring them any closer to a specific incorporation of the HUD or RESPA regulations into the Loan Agreements. Under Texas law, any alleged agreements or provisions not contained in the Loan Agreements are barred by the parol evidence rule. *See Fed. Deposit Ins. Corp. v. Condo Group Apartments*, 812 F. Supp. 694, 700 (N.D. Tex. 1992) ("Any alleged agreement not contained in the Note or Loan Agreements themselves is barred by the parol evidence rule."). While there are exceptions to this rule, including in those circumstances where the writing is facially incomplete or does not appear to be the complete embodiment of the terms relating to

-13-

the subject matter of the writing, *see Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 174 (5th Cir. 1990), no such exception appears to apply in the instant case, nor do Plaintiffs argue that any exception apply, *see* Dkt. No. 50 at 5. As a result, no HUD or RESPA regulations were incorporated into the Loan Agreements, and *Cavil* is inapplicable to the instant case.

The undersigned concludes that no duty based on HUD or RESPA can exist under these circumstances.

2.    No "Special Relationship" Exists to Otherwise Create a Duty

Plaintiffs alternatively argue that, even if the HUD regulations were not incorporated, a special relationship existed between the parties so that Defendants owed Plaintiffs a duty, which they breached. *See* Dkt. No. 50 at 5. Plaintiffs rely on *Coleman v. Bank of Am., N.A.*, No. 3:11-cv-430-G-BD, 2011 WL 2516169 (N.D. Tex. May 27, 2011), *rec. adopted*, 2011 WL 2516668 (N.D. Tex. June 22, 2011), in support of their position. *See* Dkt. No. 50 at 5. Defendants argued in their Reply brief that, based on *Blanche v. Nationwide Mortgage Corp.*, 74 S.W.3d 444, 453 (Tex. App.–Dallas 2002, no pet.), no special relationship creating a duty can exist as a matter of law in Texas. *See* Dkt. No. 51 at 14.

Under Texas law, it is well settled that a common law duty of good faith and fair dealing exists only in those circumstances where a "special relationship" exists between parties to a contract. *See Cent. Sav. & Loan Ass'n v. Stemmons Northwest Bank, N.A.*, 848 S.W.2d 232, 239 (Tex. App. – Dallas 1992, no writ). "Ordinarily, there is no such duty in lender/lendee relationships." *Vogel v. Travelers Indent. Co.*, 966

S.W.2d 748, 753 (Tex. App. – San Antonio 1998, no pet.) Indeed, Texas law does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power." *Coleman*, 2011 WL 2516169, at *1 (internal quotations omitted). Many Texas courts have addressed whether the relationship between a mortgagor and a mortgagee constitutes a "special relationship" and have consistently concluded that it does not. *See Choe v. Bank of Am.*, No. 3:13-cv-120-D, 2013 WL 3196571, at *6 (N.D. Tex. June 25, 2013); *Collier v. Wells Fargo Home Mortg.*, No. 7:04-cv-86-K, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (collecting cases); *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. – Corpus Christi 2005, pet. denied); *see also Bernal v. Wilmington Fin.*, No. 3:12-cv-3741-M, 2013 WL 2896892, at *6 (N.D. Tex. June 13, 2013) (noting in parenthetical that in Texas "a mortgagor and a mortgagee do not have a special relationship"). Further, neither the Texas Business and Commerce Code nor the Uniform Commercial Code impose a duty of good faith and fair dealing in this context. *See Water Dynamics, Inc. v. HSBC Bank U.S.A.*, No. 4:11-cv-614-A, 2012 WL 34253, at *5 (N.D. Tex. Jan. 6, 2012); *McAllister v. BAC Home Loans Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, at *4 (E.D. Tex. Apr.28, 2011), *rec. adopted*, 2011 WL 2183844 (E.D. Tex. June 6, 2011). Finally, the Fifth Circuit has also affirmatively stated that there is "no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing." *Milton v. U.S. Bank Nat. Ass'n*, No. 12-40742, 2013 WL 264561, at *3 (5th Cir. Jan. 18, 2013).

That said, a few cases exist wherein a court has acknowledged that, with evidence of "active participation" on the part of the mortgagor, actions might be taken that give rise to a duty of good faith and fair dealing. *See Omrazeti v. Aurora Bank FSB*, No. SA:12-CV-00730-DAE, 2013 WL 3242520, at *13-*16 (W.D. Tex. June 25, 2013). But, even in *Omrazeti*, the court seemed to doubt that such a duty exists, even with "active participation." *See id.* at *16. Moreover, as expressly indicated in *Milton*, if such a duty can exist, it only exists in a breach of contract context, not in a negligence claim. *See Milton*, 2013 264561, at *3. Plaintiffs raised their breach of implied duty in reference to their stand alone negligence claim, and, as such, no duty giving rise to a negligence claim can exist under the circumstances in this case.

But, out of an abundance of caution, and because Plaintiffs also allege a breach of contract claim, the undersigned will examine whether the evidence presented might create a fact issue such that summary judgment may not be warranted. As laid out more fully above, Plaintiffs alleged several facts in an attempt to demonstrate a "special relationship" existed between the parties. In her affidavit, Tangela Levels stated that (1) Defendants "explained the benefits of owning a home ... [and] ... gave advice and explained that they could walk [Plaintiffs] through the process" and that (2) Defendants convinced Plaintiffs to purchase the home through owner-financing and developed a relationship with Defendants because Defendants took Plaintiffs "under their wing." Dkt. No. 50-1 at 30-31 (¶ 3). While Defendants objected to many of these statements, their objections are ultimately of no concern because the evidence presented by Plaintiffs does not create a fact issue. In *Omrazeti*, the court determined

that the facts must demonstrate many months of conversations and active participation to create a special relationship. Here, Plaintiffs presented only evidence and allegations of a few conversations before the parties entered into the Note, which is insufficient to create a special relationship giving rise to a duty. *See Omrazeti*, 2013 WL 3242520, at *15 (finding that a "a few scattered communications" even if they were related to the loan, would not necessarily establish a special relationship sufficient to give rise to a duty of care; rather, the plaintiff must show "that the mortgagee engaged in substantial, 'active' participation that went beyond the traditional lender/borrower relationship."). This evidence does not give rise to a "special relationship," and therefore, no duty exists.

For the foregoing reasons, the undersigned concludes that Plaintiffs did not create a fact issue with respect to the first element of a negligence claim: duty. That is because no duty exists as a matter of law – the rule expressed in *Cavil* does not apply and no "special relationship" giving rise to a common law duty exists.

Accordingly, the undersigned recommends granting Defendants' Motion on Plaintiffs' negligence claims.

Having concluded that no duty exists and that summary judgment in Defendants' favor is appropriate as a matter of law, the undersigned will not address Defendants alternative arguments related to the economic loss rule or Plaintiffs' damages claims. *See* Dkt. No. 40 at 8.

## B.   Conversion

Under Texas law, conversion is "the wrongful exercise of dominion and control

over another's property in violation of the property owner's rights." *ITT Commercial Fin. Corp. v. Bank of the W.*, 166 F.3d 295, 305 (5th Cir. 1999). An action for conversion of money exists when the money is "(1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or in an intact fund; and (4) not the subject of a title claim by the keeper." *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App. – Houston [14 Dist.] 1996, writ denied); *see also Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 707 (E.D. Tex. 2006) (quoting *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996)). Because the title to money passes with delivery by its nature, a cause of action for conversion fails "when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Taylor Pipeline*, 438 F. Supp. at 707 (citing *Ins. Co. of N. Am. v. Hickman*, No. 05-99-01162-CV, 2000 WL 1207138, at *4 (Tex. App. – Dallas Aug. 25, 2000, no pet.)). Money can be the subject of a conversion claim only if it can be identified as a specific chattel, and a claim will not lie "where an indebtedness can be discharged by a payment of money generally." *Id.* (internal quotation marks omitted). Thus, when an indebtedness can be discharged by payment of money, a conversion action is inappropriate. *See Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. – Dallas 1992, writ denied); *Gronberg v. York*, 568 S.W.2d 139, 144-45 (Tex. Civ. App. – Tyler 1978, writ ref'd n.r.e.).

Plaintiffs claim that Defendants wrongfully exercised dominion over the money with which Plaintiffs made their payments, damaging Plaintiffs, and that Defendants

therefore are liable for conversion. *See* Dkt. No. 31 at 9. Plaintiffs further contend that the allegedly converted monies were the escrow funds that Plaintiffs paid to Defendants. *See* Dkt. No. 50 at 9-10. Plaintiffs allege that Andrew Merlino commingled escrow funds with personal funds, in violation of the Loan Agreements and Texas law. *See id.*

Plaintiffs rely on *White v. Mellon Mortg. Co.*, 995 S.W.2d 795 (Tex. App. – Tyler 1999, no pet.), for the proposition that Defendants, as escrow agents, had a duty to "safeguard, disburse, and account for funds properly" and that the failure to do so amounted to conversion. Dkt. No. 50 at 10. In *White*, however, the court noted that the parties were conducting themselves as directed by their agreement. *See White*, 995 S.W.2d at 801. Here, Plaintiffs do not direct the Court to any evidence that the parties agreed for the escrow funds to be kept in a separate account or to any other requirements regarding the escrow funds. The undersigned also did not find any such language in the Loan Agreements. Moreover, Plaintiffs have not presented any evidence that Defendants failed to pay taxes on the property or otherwise misappropriated the escrow funds.

Even assuming that any such evidence did exist and that Defendants improperly commingled funds, the monies that Defendants are alleged to have converted was paid by Plaintiffs to Defendants willingly. No conversion claim can exist under such circumstances. Indeed, in those circumstances where, as here, the property owner expressly or impliedly assents to the taking or disposition of the property, the owner cannot maintain an action for conversion. *See Mack v. Newton*, 737 F.3d 1343, 1354

(5th Cir. 1984) (explaining that "there can be no conversion where the owner has expressly or impliedly assented to the taking or disposition. Since Dairyland consented to, indeed made, the transfers, there was no conversion." (internal citations omitted)); *Taylor Pipeline*, 438 F. Supp. 2d at 708.

Plaintiffs agreed to a payment plan whereby they would give Defendants escrow funds, and Plaintiffs did so with no other agreement related to those funds in place. By consenting to this payment method and participating in it, Plaintiffs are precluded from asserting that Defendants' exercise of dominion over the money was wrongful.

Thus, Plaintiffs are barred from pursing a conversion claim against Defendants. Defendants Motion should be granted on Plaintiffs' conversion claim.

## C.    Common Law and Statutory Fraud

Plaintiffs assert causes of action for both common law fraud and statutory fraud. *See* Dkt. No. 31 at 9-10. Plaintiffs assert that Defendants committed fraud based on their alleged misrepresentation that the loan was a 30-year loan. *See id.* at 10; Dkt. No. 50 at 11-12. Defendants respond that summary judgment is warranted in their favor on Plaintiffs' fraud claims for a number of reasons, including because (1) any claims related to the Note and the First Modification are barred by the statute of limitations; (2) Plaintiffs ratified any alleged false representation; (3) the loan's terms were unambiguously set forth in the agreements, and therefore Plaintiffs had knowledge of the alleged false representations; (4) Plaintiffs suffered no damages from the alleged false representation to support a common law fraud claim; (5) there was no real estate transaction to support a statutory fraud claim; and (6) the statute of frauds bars the

fraud claims. *See* Dkt. No. 50 at 11-13.

1.     Statute of Limitations

Defendants claim that Plaintiffs' claims for common law and statutory fraud related to the Note and the First Modification are barred by the statute of limitations.

In Texas, the limitations period for both common law and statutory fraud is four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). In their Second Amended Complaint, Plaintiffs allege that the representation "[t]hat the loan was a 30 year loan" induced Plaintiffs into entering into the agreement. *See* Dkt. No. 31 at 10, 11. Defendants argue that, if the alleged misrepresentation is the basis of the fraud claim, the misrepresentation must have been made at or near the time of execution, which was April 4, 2004 for the Note and May 16, 2007 for the First Modification. *See* Dkt. No. 40 at 15, 16. Defendants posit that the statute of limitations related to these two agreements therefore ran on April 4, 2008 and May 16, 2011, respectively, and therefore summary judgment is proper.

Plaintiffs respond that the statute of limitations is tolled by either fraudulent concealment and/or the discovery rule, arguing that "[a] claim for fraud accrues 'when the fraud should have been discovered by reasonable diligence.'" Dkt. No. 50 at 12. It is not entirely clear if Plaintiffs are asserting both defenses to the statute of limitations claim, but, because the same standard applies to both rules, *see Williams v. Deutsche Bank Nat'l Trust Co.*, No. A-10-CV-711-LY, 2011 WL 891645, at *6 (W.D. Tex. Mar. 11, 2011) (citing *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App. – Houston [14th Dist.] 2008, pet. denied)), the undersigned need not resolve that ambiguity. Defendants

replied that, because Plaintiffs failed to plead the discovery rule, they are not entitled to assert it in their summary judgment response. *See* Dkt. No. 51 at 15.

The undersigned concludes that Plaintiffs met their pleading burden by putting Defendants on notice of their reliance on a fraudulent concealment/discovery rule claim. While Texas law does supply the applicable statute of limitations, it does not govern the pleading requirements of a case in federal court. *See Colonial Penn Ins. Co. v. Market Planners Ins. Agency*, 1 F.3d 374, 376 (5th Cir. 1993); *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990). And, while the discovery rule must be specifically pleaded in Texas state court to avoid the statute of limitations, it need not be specifically pleaded in federal court. *See Colonial Penn Ins. Co.*, 1 F.3d at 376. Rather, it is enough that the plaintiff plead sufficient facts to put the defendant on notice of the theories on which the complaint is based. *See id.*; FED. R. CIV. P. 8. Noting the facts on which the Fifth Circuit relied in *Colonial Penn*, the undersigned concludes that Plaintiffs satisfied their burden. *See Colonial Penn Ins. Co.*, 1 F.3d at 376 n.2 (finding that allegations of "failing to disclose all material information with respect to the sale of Colonial Penn Policies and the premium arising from those sales, and by failing to account for money received by Market Planners on behalf of plaintiff" were sufficient to put defendants on notice that plaintiffs would use the discovery rule). Plaintiffs alleged that (1) Defendants indicated the loan was a 30-year loan; (2) Defendants continued to make these representations so long as the loan was still valid and binding; and (3) Defendants "[o]ver and over again" Defendants failed to use reasonable care in communicating the status and facts of the loan. Dkt. No. 31 at 5-6. As in *Colonial*

*Penn*, Plaintiffs informed Defendants that they did not know of their injury because Defendants continued to make the alleged misrepresentations and continued to not use reasonable care. The undersigned thus turns to analyzing whether the statute of limitations has run, even with the application of these tolling doctrines.

In diversity cases in which the causes of action arise under Texas law, federal courts apply Texas statutes of limitations rules, including any accompanying rules regarding tolling. In Texas, "a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). For fraud cases, the limitations period for both common law and statutory fraud is four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Both parties concede that, in order for a fraudulent statement to have induced Plaintiffs into the Note, First Modification, and Second Modification, the statement must have been made before the agreements were executed. *See* Dkt. No. 40 at 13 & 15; Dkt. No. 50 at 11. Thus, at the latest, the four-year limitations period on Plaintiffs' fraud claims began to run on the date that each agreement was entered into: March 7, 2004, May 16, 2007, and June 25, 2010, respectively. *See* Dkt. No. 40, Exs. 2, 3 & 4. Unless a tolling doctrine applies, then, Plaintiffs had until March 7, 2008, May 16, 2011, and June 25, 2013 to file their fraud claims with respect to the agreements.

Because the instant lawsuit was filed before the limitations ran on the Second Modification, it is not barred by the limitations defense, and Defendants do not argue otherwise. With respect to the Note and First Modification, however, these claims are

barred by the applicable statute of limitations.

Plaintiffs seek to avoid this outcome by arguing that the discovery rule and/or fraudulent concealment doctrine apply and toll the running of the limitations period. The discovery rule is a doctrine that may apply to extend the statute of limitations in certain cases. *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011). The rule provides that the statute of limitations will begin to run from the date the injury was, or could have been, reasonably discovered. *See Williams*, 2011 WL 891645, at *4; *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *Mecom v. Vinson & Elkins*, No. 01-98-00280-CV, 2001 WL 493426, at *13 (Tex. App. – Houston [1st Dist.] May 10, 2001, pet dism'd). For the statute of limitations to be tolled, the injury must be both inherently undiscoverable and objectively verifiable. *See Williams*, 2011 WL 891645, at *4. To be inherently undiscoverable, the injury must be one that is unlikely to be discovered within the applicable limitations period, notwithstanding the exercise of due diligence. *See S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). Indeed, "inherently undiscoverable" does not merely mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period. *See id.* Rather, the discovery rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action – not until she realizes that the facts do support a cause of action: "It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once [a claimant learns] that she [has] been injured, the burden [is] on her to determine whether she should file suit." *Colonial Penn Ins. Co.*

*v. Market Planners Ins. Agency*, 157 F.3d 1032, 1034 (5th Cir. 1998) (internal quotation marks omitted). The Court conducts an objective inquiry into whether the plaintiff should have discovered the injury, not an inquiry into the plaintiff's subjective belief as to whether the injury could be remedied. *See J.M.K. 6, Inc. v. Gregg & Gregg*, P.C., 192 S.W.3d 189, 197 (Tex. App. – Houston [14th Dist.] 2006, no pet.).

Fraudulent concealment is another doctrine that works to toll the statute of limitations. Under the fraudulent concealment doctrine, "'accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.'" *Williams*, 2011 WL 891645, at *6 (quoting *S.V.*, 933 S.W.2d at 6). Rather, in such circumstances, the limitations period is tolled "'until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action.'" *Id.* (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1998)). This is, generally speaking, the same analysis that applies to the discovery rule. *See id.* As such the undersigned will examine whether the exceptions apply simultaneously.

Plaintiffs claim that they did not discover Defendants' alleged misrepresentation with respect to the Note until it first matured and the parties entered into the First Modification. *See* Dkt. No. 50 at 12. Plaintiffs allege that they "relied on Defendants' statements, and thus would not have discovered the fraud until the alleged maturity dates of the loans." Dkt. No. 50 at 12. Plaintiffs further state that "[t]he original loan transaction was entered into in 2004, and thus Plaintiffs may not have discovered the fraud until 2007, when it allegedly matured." *Id.*; *see also* Dkt. No. 50-1 at 31 (¶¶ 5-7).

Defendants disagree. *See* Dkt. No. 40 at 14. The undersigned must view all facts and draw all reasonable inferences in the light most favorable to Plaintiffs and resolve all disputed factual controversies in favor of Plaintiffs under these circumstances. *See Anderson*, 477 U.S. at 255; *Boudreaux*, 402 F.3d at 540; *Lynch Props.*, 140 F.3d at 625.

But, ultimately, the dispute is of no consequence. Assuming *arguendo* that a tolling doctrine applies, the statute of limitations related to fraud with respect to the Note began to run, at the latest, on the date on which Plaintiffs entered into the First Modification and had learned that Defendants took the position that the Note, based on its being structured with a balloon payment due after three years structure, had matured – which was March 7, 2007. Dkt. No. 40-1; *see also* Dkt. No. 50-1 at 31 (¶¶ 4-5). Four years from March 7, 2007 is March 7, 2011. Plaintiffs filed their lawsuit in Texas state court on December 2, 2011, several months after March 7, 2011. As such, Plaintiffs' fraud claims – both common law and statutory – related to the Note are barred by the statute of limitations, even if the tolling doctrines apply. Defendants' Motion should be granted as to these claims.

Plaintiffs also appear to claim that they did not discover the alleged fraud with respect to the First Modification until it matured. *See* Dkt. No. 50 at 12. This is a closer question in light of the history between the parties at the time that they entered into the First Modification. If the tolling doctrines apply with respect to the First Modification, the statute of limitations will not have run. Thus, unlike with the Note, the undersigned must analyze whether the tolling doctrines apply.

The Fifth Circuit and courts in this district have found, based on somewhat

similar facts, that, even if allegedly fraudulent statements were made, in those instances in which reading the documents at issue would have revealed the fraudulent nature of the statements, no tolling doctrines can save time-barred claims. *See Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404 (5th Cir. 1998); *A.I. Credit Corp. v. Thomas*, No. Civ. A. 3:03-cv-298-B, 2005 WL 936932 (N.D. Tex. Apr. 21, 2005), *aff'd*, 201 F. App'x 232 (5th Cir. 2006).

In *Martinez Tapia*, the plaintiff brought a fraud claim related to certain investments that he had made and argued that the statute of limitations had not run because he did not learn of the fraud until several years after he entered into the investment agreement. *See* 149 F.3d at 406-08. The plaintiff relied on allegedly fraudulent statements made by investment advisors. *See id.* at 410-11. The Fifth Circuit noted that the plaintiff failed to read all of the investment documents at issue, which contained the terms of the agreement and would have revealed any alleged fraud. *See id.* The Fifth Circuit concluded that a reasonable investigation, consisting of merely reading the documents, would have alerted the plaintiff to the alleged fraud and that, as such, no tolling doctrines could be used to suspend the running of the statute of limitations. *See id.*

In *A.I. Credit Corp. v. Thomas*, the parties were engaged in a dispute regarding the terms of interest payments on a life insurance policy purchased by plaintiff. *See* 2005 WL 936932, at *2-*3. The court in *A.I. Credit* concluded that the plaintiff's injury was not "inherently undiscoverable" because the terms of the document at issue were clearly contrary to the allegedly fraudulent assertions made by defendant and that,

therefore, plaintiff could have discovered the fraud by reading the document. *See id.* at *4. The court held that the plaintiff could not "simply rely on the bald assertions and promises" of the opposing party but rather "reasonable diligence required [plaintiff] to read the [document] he signed." *Id.* Under the circumstances, the discovery rule could not save his time-barred claims. *See id.* The Fifth Circuit affirmed the district court's decision, noting that the plaintiff "was put on notice of his injury as of the date he signed the [document]." 201 F. App'x at 235-36.

The undersigned appreciates that this is a close call. Plaintiffs were admittedly unfamiliar with home buying, *see* Dkt. No. 50-1 at 30-31 (¶ 3), and Defendants owned several real estate properties, *see* Dkt. No. 50-1 at 6. The First Modification stated that "[t]he note will be amortized over thirty years at 8% interest. Principal and interest payment of $2091.23 and 1/12 of the taxes estimated to be $635.53 a month, first payment being due and payable on the same day of each succeeding month there until May 10, 2008 when the entire balance is due and payable[.]" Dkt. No. 40-2. Thus, the First Modification admittedly contains language related to a 30-year amortization but also plainly states that the entire balance would be due on May 10, 2008. *See id.* Moreover, Plaintiffs state they entered into a modification of the Note because they did not know the original Note was structured with a balloon payment due after three years and that they thought it was amortized over thirty years, *see* Dkt. No. 50-1 at 31 (¶¶ 4-7), although Plaintiff Tangela Levels affidavit also states that "[o]ther portions of the [loan] documents purported to be a three (3) year balloon," *see id.* at 31 (¶ 4).

The undersigned has carefully considered these allegations and the affidavit

testimony that Defendants continuously made the representations regarding the 30-year period of the loan. *See* Dkt. No. 50-1 at 33-34 (¶¶ 18, 20, & 25). But, regardless of Defendants' statements, the fact remains that, as in *Martinez Tapia* and *A.I. Credit*, a reasonable investigation – merely reading the First Modification, *see* Dkt. No. 40-2 – would have alerted Plaintiffs to the alleged fraud. Thus, Plaintiffs' injury was simply not "inherently undiscoverable" when they signed the First Modification. Therefore, Plaintiffs' common law and statutory fraud claims as to the First Modification are barred based on the running of the statute of limitations, and the Court should grant Defendants' Motion on these claims.

In sum, Plaintiffs' common law and statutory fraud claims with respect to both the Note and the First Modification are barred by the statute of limitations. The undersigned recommends granting summary judgment in Defendants' favor as to Plaintiffs' fraud claims related to the Note and the First Modification.

Plaintiffs' fraud claims with respect to the Second Modification are not time barred, and the undersigned must analyze whether summary judgment is warranted on any of Defendants' remaining arguments.

2. Knowledge of Falsity

Defendants argue that "the payment terms were unambiguously set forth in the Real Estate Lien Note, the First Modification, and the Second Modification," that Plaintiffs are charged with knowledge of the terms of the agreements, and that, therefore, Plaintiffs' fraud claims fail as a matter of law. *See* Dkt. No. 40 at 19-20. Plaintiffs did not respond to this argument in their Response. *See* Dkt. No. 50 at 11-13.

Defendants are correct that, under Texas law, parties are charged with knowledge of the contents of the agreements that they sign. *See Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165, 171 (Tex. App. – Texarkana 2000, pet. denied). That rule only applies, however, absent fraud, misrepresentation, or concealment. *See id.* What constitutes sufficient fraud or misrepresentation so as to vitiate the aforementioned rule has been the subject of many court opinions. *See Athey v. Mortg. Elec. Registration Sys., Inc.*, 314 S.W.3d 161, 165 (Tex. App. – Eastland 2010, pet. denied) (collecting cases). As Defendants properly noted, the alleged misrepresentations also implicate an analysis of the statute of frauds. *See* Dkt. No. 40 at 23-24; *Taft v. Sherman*, 301 S.W.3d 452, 455 (Tex. App. – Amarillo 2009, no pet.). The undersigned notes that Plaintiffs' claims also raise questions relating to parol evidence. *See Jack H. Brown*, 906 F.2d at174. At bottom, however, this analysis relates to reliance and whether Plaintiffs properly relied on any misrepresentations that Defendants made in the negotiation of the Second Modification. *See Taft*, 301 S.W.3d at 457.

While the undersigned acknowledges that "'the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by exercise of proper care,'" *Athey*, 314 S.W.3d at163 (quoting *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1993)), that is not necessarily the circumstance in the instant case. Overall, Texas courts examine whether the circumstances surrounding the negotiations warrant vitiating the contract based on fraud. *See id.*

Here, the parties had a long history. Twice before, the parties had entered into

agreements related to the purchase of the Property. Plaintiffs claimed that they did not know that the Note was structured with a balloon payment at the end of three years but rather thought they had agreed to a 30-year note. *See* Dkt. No. 50-1 at 31 (¶¶ 4-7). The First Modification was structured similarly to the Note, except that the balloon payment became due after one year with an option to extend the payments for one additional year. *See* Dkt. No. 40-2. The Second Modification contains the following language: "The Note is hereby amended.... Maker promises to pay Holder principal and interest payment of $2,482.95 ... on the 15th day of each month until June 15, 2011, when the entire principal and interest is due and payable." Dkt. No. 40-3. Thus, the Second Modification, just as with the Note and the First Modification, was structured with a balloon payment coming due much sooner than 30 years after entering into the agreement. *See* Dkt. No. 40-3.

Plaintiffs' fraud claim with respect to the Second Modification is that they did not know the loan was structured as a balloon payment and instead thought it was a 30-year mortgage. *See* Dkt. No. 50 at 12. This is the same fraud claim Plaintiffs asserted with respect to the Note and the First Modification. *See id.*

Based on the foregoing facts, the undersigned simply cannot conclude that Plaintiffs did not have knowledge of the terms of the Second Modification and that, therefore, even assuming the same alleged misrepresentations were made, Plaintiff could have relied on those misrepresentations. This case presents a series of facts that give rise to a perfect example of an old saying: "Fool me once, shame on you; fool me twice, shame on me." Plaintiffs entered into a similar agreement with Defendants

three times, each time performing to some extent under the agreement and three times signing an agreement with similar terms. Moreover, the Second Modification, on its face, states that the loan is due in full on June 15, 2011. Nowhere does it mention a 30-year loan schedule. Dkt. No. 40-3. Thus, the instant case presents a situation wherein Plaintiffs claim that they were fraudulently induced to enter into a contract based on certain representations that, even if made, directly contradict the express, unambiguous terms of a written agreement. When oral promises are directly contradicted by express, unambiguous terms of a written agreement, reliance on those oral promises is not justified. *See Taft*, 301 S.W.3d at 458 ("[A] party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract."); *Prendes v. Select Portfolio Servicing, Inc.*, No. 4:12-cv-337-Y, 2012 WL 6913511, at *6 (N.D. Tex. Dec. 28, 2012) ("Assuming that oral representations by SPS's employees were made [and were contrary to the contract's terms], while certainly deplorable, they are inconsistent with the parties' contract and thus do not give rise to a fraud claim."); *Athey*, 314 S.W.3d 164-65.

Accordingly, the undersigned concludes that Plaintiffs' fraud claims fail as a matter of law and recommends that summary judgment in Defendants' favor should be granted on these claims.

While Defendants raise additional summary judgment arguments with respect to Plaintiffs' fraud claims, as laid out above, these arguments are mooted by the undersigned's conclusion that summary judgment should be granted for the

aforementioned reasons.

## D.  Negligent Misrepresentation

Plaintiffs base their negligent misrepresentation claim on the statements that they allege that Defendants made regarding the terms of the loans, including that the loan was for 30 years. *See* Dkt. No. 31 at 11-12. Plaintiffs further claim that Defendants' "attempt[s] to treat the loan as a balloon note and foreclose on the Property" are actionable because Defendants "did not exercise reasonable care or competence in obtaining or communicating this information to Plaintiffs." *Id.* at 12. As a result, Plaintiffs claim to have suffered "actual economic damages." *Id.* Defendants argue that Plaintiffs' negligent misrepresentation claim fails as a matter of law due to the economic loss – or independent injury – doctrine. *See* Dkt. No. 40 at 24-25. Defendants also argue that Plaintiffs have presented no evidence that they have suffered a "pecuniary loss" as required under the law. Finally, Defendants argue that the statute of limitations operates to bar Plaintiffs' negligent misrepresentation claims related to the Note and First Modification.

Defendants also note in their Reply that Plaintiffs did not respond to the Motion as to the negligent misrepresentation claim. The undersigned disagrees and concludes that Plaintiffs responded to the arguments at least with respect to the independent injury doctrine. *See* Dkt. No. 50 at 8-9. Plaintiffs' primary argument seems to be that they have alleged additional injuries, other than those arising out of a contract, including mental anguish, harm to credit history, emotional distress, anxiety, depression, humiliation, and the value of lost time. *See* Dkt. No. 50 at 8.

1.     Independent Injury/Economic Loss Doctrine

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a misrepresentation in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005); *see also Nazareth Int'l Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App. – Dallas 2009, pet. denied). The misrepresentation "must be one of existing fact, not a promise of future conduct." *Alexander v. Grand Prairie Ford, L.P.*, No. 3:02-cv-1561-K, 2007 WL 1576260, at *6 (N.D. Tex. May 31, 2007); *accord Nunn, Yoest, Principals & Assocs., Inc. v. Union Pac. Corp.*, 69 F. App'x 658, 2003 WL 21356004, at *2 (5th Cir. May 23, 2003); *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App. – Austin 2003, no pet.). A promise to do or refrain from doing an act in the future is not actionable because it does not contain an existing fact. *See Alexander*, 2007 WL 1576260, at *6.

Defendants argue that Plaintiffs' negligent misrepresentation claim fails as a matter of law based on the economic loss rule because "the negligent misrepresentation that [Plaintiffs] claim occurred relate directly to the [Loan Agreements]" and therefore arise out of a contract. Dkt. No. 40 at 25. While the economic loss rule is applicable to a claim for negligent misrepresentation in Texas, *see D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998); *accord Berry v. Federal Nat. Mortg.*

*Ass'n*, No. 3:11-cv-1288-L, 2013 WL 1294008, at *16-*17 (N.D. Tex. Mar. 29, 2013), the rule does not automatically bar a negligent misrepresentation claim, *see Orcasitas v. Wells Fargo Home Mortg., Inc.*, No. 3:12-cv-2549-P, Dkt. No. 20 at 6 (N.D. Tex. Apr. 10, 2013) (relying on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011)). Despite the nonexistence under Texas law of a duty between a mortgage servicer and borrower or a lender and borrower, as discussed above, *see also Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (finding no fiduciary relationship between a banker who made personal loans and took interest in the business and the borrower); *UMLIC VP LLC*, 176 S.W.3d at 613-15 (holding that mortgagor did not owe mortgagee a duty in negligence for conduct relating to the foreclosure sale because the deed of trust governs the duties of the parties); *Fraley v. BAC Home Loans Servicing, LP*, No. 3:11-cv-1060-N-BK, 2012 WL 779130, at *8 (N.D. Tex. Jan. 10, 2012) (dismissing gross negligence claim because, "as mortgagor, Defendants did not owe a legal duty to Plaintiff") (citation omitted), *rec. adopted* 2012 WL 779654 (N.D. Tex. Mar. 9, 2012), Texas courts have held that there is always a duty to correct one's own prior false or misleading statement, *see Hurd v. BAC Home Loans Servicing*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citations omitted).

While the decisions on which Plaintiffs' Response relies address motions to dismiss and therefore involve a lower thresh hold for survival than a motion for summary judgment, *see* Dkt. No. 50 at 8, the undersigned nonetheless is not entirely convinced that summary judgment is proper on this claim. Plaintiffs alleged damages separate and apart from purely economic loss. *See* Dkt. No. 31 at 14; Dkt. No. 50-1 at

32 (¶ 12) & 35 (¶ 29).[7] In their summary judgment evidence, Plaintiffs presented affidavit testimony that they were damaged by Defendants' actions in an amount up to $500,000 and that such damages included harm to their credit, clouded title, mental anguish, emotional distress, anxiety, depression, and humiliation. These damages demonstrate something other than pure economic loss.

The undersigned notes, that in their argument for summary judgment on Plaintiffs' general negligence claims, Defendants contend that mental anguish and emotional distress damages are not recoverable and therefore Plaintiffs' claims fail as a matter of law. *See* Dkt. No. 40 at 9. To the extent that Defendants intended to raise the argument as to Plaintiffs' negligent misrepresentation claims too, even assuming *arguendo* that the damages for mental anguish and emotional distress are not recoverable for a negligent misrepresentation action, Plaintiffs have presented some evidence they suffered other damages that are not purely economical. Thus, Plaintiffs' claims still survive.

Drawing all reasonable inferences in the light most favorable to Plaintiff as the nonmoving party, the Court cannot say with certainty that no genuine issue of material fact exists with respect to whether Plaintiffs' negligent misrepresentation

---

[7] Defendants object to the statements in Paragraphs 12 and 29 of the Tangela Levels Affidavit as being "bare conclusory statements of fact and as lacking proper foundation." Dkt. No. 51 at 10 & 11-12. Defendants also object that Paragraph 29 contains statements that are legal argument and are outside Tangela Levels's personal knowledge. *See id.* at 12. The undersigned has considered these objections and concludes that they are without merit. To the extent that they constitute legal conclusions, the undersigned does not rely on them as true legal conclusions. Accordingly, these objections are overruled.

claim is barred by the economic loss doctrine.

2.    Pecuniary Loss

Defendants alternatively argue that Plaintiffs have no evidence to support the fourth prong of a negligent misrepresentation cause of action – that Plaintiff suffered pecuniary loss by justifiably relying on the representation – and that summary judgment is therefore appropriate. The pecuniary loss analysis is similar to the economic loss analysis. *See JPA, Inc. v. USF Processors Trading Corp., Inc.*, No. 3:05-cv-433-P, 2006 WL 740401, at *6 (N.D. Tex. Mar. 15, 2006) (noting that the Texas Supreme Court reiterated its acceptance of the independent injury requirement in negligent misrepresentation claims by requiring a pecuniary loss). While Defendants present evidence of a measure of damages that might support a finding that no pecuniary loss exists, Plaintiffs present evidence via affidavit of potential pecuniary loss, as discussed more fully above. *See* Dkt. No. 50-1 at 32 (¶ 12) & 35 (¶ 29). Drawing all reasonable inferences in the light most favorable to Plaintiff as the nonmoving party, the undersigned cannot say with certainty that no genuine issue of material fact exists with respect to the pecuniary loss element of Plaintiffs' negligent misrepresentation claim.

3.    Statute of Limitations

Defendants finally argue that Plaintiffs' negligent misrepresentation claims are barred by the statute of limitations. *See* Dkt. No. 40 at 26-27. Plaintiffs do not respond to Defendants' argument in this regard.

The statute of limitations for Plaintiffs' negligent misrepresentation claim is

governed by Texas law. *See Kansas Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1369 (5th Cir. 1994). The statute of limitations is two years for a negligent misrepresentation claim. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

While not specifically argued with respect to negligent misrepresentation, the undersigned will assume that, as with their fraud claims, Plaintiffs seek to avoid dismissal by arguing that the discovery rule and/or fraudulent concealment doctrine apply and toll the running of the limitations period. It appears that Plaintiffs' negligent misrepresentations claims are pleaded with respect to all three signed agreements – the Note, the First Modification and the Second Modification – but Defendants concede (or fail to argue) that the statute of limitations has run on the Second Modification. *See* Dkt. No. 40 at 26. Thus, the undersigned need only analyze whether the statute of limitations has run on the Note and the First Modification.

As discussed more fully above, assuming *arguendo* that the discovery rule or fraudulent concealment applies, the statute of limitations related to negligent misrepresentation with respect to the Note began to run, at the latest, when Plaintiffs entered into the First Modification and had learned that Defendants took the position that the Note, based on its being structured with a balloon payment due after three years structure, had matured – which was March 7, 2007. Dkt. No. 40-1; *see also* Dkt. No. 50-1 at 31 (¶¶ 4-5). Two years from March 7, 2007 is March 7, 2009.

With respect to the First Modification, as discussed more fully above, Plaintiffs can rely on neither the discovery rule nor fraudulent concealment to bar the running of the statute of limitations because Plaintiffs' injury was simply not "inherently

undiscoverable" when they signed the First Modification, and Plaintiffs have presented no evidence to the contrary. Therefore, the statute of limitations began to run with respect to the First Modification when they entered into it – May 15, 2007.

Plaintiffs filed their lawsuit in Texas state court on December 2, 2011, several years after the March 7, 2009 and May 15, 2007 dates. As such, Plaintiffs' negligent misrepresentation claims related to the Note and First Modification are barred by the statute of limitations, and the undersigned recommends granting Defendants' Motion as to these claims.

As discussed above, Plaintiffs' negligent misrepresentation claim as to the Second Modification remains pending, and Defendants' summary judgment as to this claim should be denied.

## E.   Breach of Contract

In their Second Amended Complaint, Plaintiffs allege that the Loan Agreements were valid contracts, Plaintiffs performed under them, Defendants breached them, and Plaintiffs suffered damages as a result. *See* Dkt. No. 31 at 13. Defendants asserted the affirmative defense of "breach of contract" in response. *See* Dkt. No. 39 at 11. Defendants' Motion focuses solely on its affirmative defense, arguing that Plaintiffs' materially breached the Second Modification by failing to make payments under its terms and materially breached the Deed of Trust by allowing three liens to be filed that encumbered the Property. *See* Dkt. No. 40 at 36-37. Plaintiffs respond only that whether a material breach occurred is a fact question and therefore improper for summary judgment disposition. *See* Dkt. No. 50 at 17.

As an initial matter, the undersigned notes that simply because an issue can be considered a fact question does not alone dictate that summary judgment cannot be had. *See Bank One, Tex. v. F.D.I.C.*, 16 F. Supp. 2d 698, 714 (N.D. Tex. 1998) ("Because the FDIC, in response to Bank One's pointing this court to the absence of evidence of a breach of a material duty, has failed to establish a genuine issue of material fact in regard to Bank One's alleged breach of contract, the court grants summary judgment dismissing this counterclaim."). Because Defendants moved for summary judgment on Plaintiffs' breach of contract claim based on its affirmative defense that Plaintiffs breached first, Defendants must establish each element of the defense beyond peradventure. *See Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-cv-2347-L, 2013 WL 2090307, at *10 (N.D. Tex. May 14, 2013).

The parties do not dispute that each of the Loan Agreements constitutes a valid contract. The crux of the analysis, then, focuses on the second and third elements – did Plaintiffs tender performance (or did they breach the contract, as Defendants allege), and, if so, did Defendants breach their duty under the contract.

In its Motion, Defendants points to evidence in support of its claim that Plaintiffs breached the Second Modification and Deed of Trust, including evidence that Plaintiffs admittedly failed to make payments under the Second Modification and that three tax liens were filed on the Property in violation of the Deed of Trust. *See* Dkt. No. 40 at 37 (citing Dkt. Nos. 40-10 (Byron Levels Affidavit containing testimony that he failed to make monthly payments due under the Second Modification), 40-3 (Second Modification), 40-7 (First Tax Lien), 40-9 (Second Tax Lien), 40-8 (Third Tax Lien),

40-16 (Deed of Trust)). Plaintiffs presented evidence of many potential breaches, including a failure to properly manage the loan and escrow payments. *See* Dkt. No. 50-1 at 32 (¶ 10).

But neither party addresses the timing of the others' alleged breaches. Timing is important because Defendants are excused from performance only if Plaintiffs breached the contract before Defendants' alleged breach. Indeed, "[i]t is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co.*, Inc., 134 S.W.3d 195, 196 (Tex. 2004). Defendants have not established beyond all peradventure that any breach by Plaintiffs occurred before any breach by Defendants. In fact, Defendants failed to address this factual issue at all. The undersigned cannot say with certainty, then, that Defendants' affirmative defense of prior breach of contract is not subject to a genuine dispute of material fact, and, as such, the undersigned recommends denying Defendants' motion for summary judgment on this claim.

## F.    Violations of TILA

Plaintiffs claim that Defendants violated TILA by failing to provide Plaintiffs with any of the items required under TILA, including the credit terms and costs. *See* Dkt. No. 31 at 12. Defendants argue that they are not creditors as defined by TILA and therefore are not subject to its requirements.

TILA applies only to those who are "creditors" under the Act. *See Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 752 (5th Cir. 2002). TILA defines a

creditor as a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit that is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. *See id.* (citing 15 U.S.C. § 1602(g)). The question, then, is whether Defendants "regularly extend[] ... consumer credit" so as to constitute creditors under the TILA definition. The Code of Federal Regulations implemented to codify TILA, *see* 12 C.F.R. § 226.1(a), states that a person regularly extends consumer credit, and thus is subject to TILA, "only if it extended credit ... more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year ... [or] ... current calendar year," 12 C.F.R. § 226.2(a)(17)(v). Because Plaintiffs do not allege that Defendants extended consumer credit other than secured by a dwelling, Defendants are "creditors" within the meaning of TILA only if they extended consumer credit secured by a dwelling at least five times in the period from January 1, 2003 until March 7, 2004 (the date of the Note), from January 1, 2006 until May 16, 2007 (the date of the First Modification), or from January 1, 2009 until June 25, 2010 (the date of the Second Modification).

Defendants present evidence that, other than the transactions entered into with Plaintiffs, they have made no other consumer credit transactions. *See* Dkt. No. 40-12 at 3 (¶ 5). Plaintiffs presented no evidence to the contrary and, in fact, did not even make any allegations or arguments to the contrary. Thus, there is no evidence or no

genuine dispute of material fact supporting a finding or conclusion that Defendants are creditors under TILA.

Accordingly, Plaintiffs' TILA claims fail as a matter of law. The undersigned recommends granting Defendants' Motion as to this claim.

## G.    Violations of RESPA

Plaintiffs allege that Defendants violated RESPA by failing to provide them with a good faith estimate. *See* Dkt. No. 31 at 13; Dkt. No. 50 at 15. Defendants argue that the Loan Agreements do not qualify as "federally related mortgage loan[s]" and therefore are not subject to any RESPA requirements. *See* Dkt. No. 40 at 34-35.

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2602 *et seq.*, applies only in cases involving a "federally related mortgage loan," as defined in 12 U.S.C. § 2602(1). The definition includes two prongs and requires satisfaction of both. Defendants do not dispute that the mortgage loan satisfies the first but do dispute the applicability of the second prong – that the loans fall into one of four designated categories, that is, that the loan:

> (i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government; or
> (ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or
> (iii) is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan

> Mortgage Corporation; or
>
> (iv) is made in whole or in part by any 'creditor', as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year, except that for the purpose of this chapter, the term 'creditor' does not include any agency or instrumentality of any state....

12 U.S.C. § 2602(1). Lenders making loans in the first three categories are insured by, regulated by, or in some other way connected with a federal agency. *See Allison v. Liberty Sav.*, 695 F.2d 1086, 1090 (7th Cir. 1982). The fourth category covers private lenders making residential real estate loans in excess of one million dollars per year. *See id.* Defendants argue that they do not fall into any of these categories and therefore are not subject to RESPA. The undersigned agrees.

Defendants have brought forth evidence that none of the categories apply, *see* Dkt. No. 40-12 at 3 (¶¶ 5-8), and Plaintiffs failed to present any evidence in response to prove or demonstrate a genuine issue of material fact that the Loan Agreements fall under one of these four categories. Plaintiffs attempt to argue that, because Defendants have deposited the money that they received from Plaintiffs into a bank, RESPA should apply. But the statute's language makes no such leaps, Plaintiffs have presented no case law to support their argument, and these statements, alone, contained only in their Response are not sufficient to create a fact issue. *See In re Knowles*, 442 B.R. 150, 158-59 (1st Cir. BAP 2011).

Thus, the undersigned recommends that summary judgment in Defendants' favor should be granted on Plaintiffs' RESPA claims.

**H.     Violations of Texas Finance Code**

In their Second Amended Complaint, Plaintiffs contend that Defendants violated Chapter 343 of the Texas Finance Code because balloon payments are strictly prohibited. *See* Dkt. No. 31 at 12. Defendants argue that summary judgment is proper on Plaintiffs' Texas Finance Code claim because the Loan Agreements at issue do not fall under the definition of "high-cost home loan." *See* Dkt. No. 40 at 28-32.

Section 343.202 of the Texas Finance Code prohibits balloon payments in high-cost home loans. *See* TEX. FIN. CODE § 343.202. A "high-cost home loan" is a loan that:

> (A) is made to one or more individuals for personal, family, or household purposes;
> (B) is secured in whole or part by:
> > (i) a manufactured home, as defined by Section 347.002, used or to be used as the borrower's principal residence; or
> > (ii) real property improved by a dwelling designed for occupancy by four or fewer families and used or to be used as the borrower's principal residence;
> (C) has a principal amount equal to or less than one-half of the maximum conventional loan amount for first mortgages as established and adjusted by the Federal National Mortgage Association;
> (D) is not:
> > (i) a reverse mortgage; or
> > (ii) an open-end account, as defined by Section 301.002; and
> (E) is a credit transaction described by 12 C.F.R. Section 226.32, as amended, except that the term includes a residential mortgage transaction, as defined by 12 C.F.R. Section 226.2, as amended, if the total loan amount is $20,000 or more and:
> > (i) the annual percentage rate exceeds the rate indicated in 12 C.F.R. Section 226.32(a)(1)(i), as amended; or
> > (ii) the total points and fees payable by the consumer at or before loan closing will exceed the amount indicated in 12 C.F.R. Section 226.32(a)(1)(ii), as amended.

TEX. FIN. CODE § 342.201(1). Defendants argue that there is no genuine dispute of

material fact that Plaintiffs and/or the Loan Agreements do not meet the definitions in Sections 343.202(1)(E), 343.202(1)(B)(i), and 343.202(1)(B)(ii). *See* Dkt. No. 40 at 29-32.

It is clear that Plaintiffs do not meet section 343.202(1)(B)(i) where the home at issue is not a manufactured home and no party claims otherwise, so the undersigned will not address that section, concluding that summary judgment would be appropriate if Plaintiffs did not meet the other prong of the subdivision – 343.202(1)(B)(ii) – that the dwelling is used or to be used as borrower's principal residence. The undersigned will therefore address Defendants' arguments as to Sections 343.202(1)(E) and 343.202(1)(B)(ii).

1.    Section 343.202(1)(E)

There is no genuine dispute of material fact that the Note and subsequent modifications constituted a residential mortgage with a total loan amount in excess of $20,000. The parties do not agree, however, with respect to the second two subdivisions – whether the annual percentage rate or points and fees payable at closing exceeded the permissible amount.

a.    *Section 343.202(1)(E)(i)*

The interest rates for the Note, First Modification, and Second Modification were 6.0%, 8.0%, and 10.0%, respectively. *See* Dkt. Nos. 40-1, 40-2, & 40-3. 12 C.F.R. § 226.32(a)(1)(i) caps the interest rate for loans not to be considered high-cost at 8 percentage points more than the annual percentage rate at consummation. Defendants present evidence that at no time during the year 2004 – before the Note was executed

– was the annual percentage rate higher than 2.39%. *See* Dkt. No. 40 at 29 (citing Dkt. No. 40-13). Therefore, to constitute a high-cost home loan, the interest rate must have been 10.39% or higher.

But Defendants only present evidence as to the applicable interest rate in 2004 – when the Note was first signed – and not as to the interest rates in 2007 or 2010, when the subsequent modifications were signed. Thus, even if there is no genuine dispute of material fact that the Note is not a high-cost home loan subject to the Texas Finance Code's balloon payment provisions, there is no such undisputed evidence with respect to the First or Second Modifications.

As such, a genuine issue of material fact exists as to those modifications, and summary judgment is not proper as to any Texas Finance Code claims based on the argument that they do not meet Section 343.202(1)(E)(i). But, because the evidence demonstrates the Note does not fall under Section 343.202(1)(E)(i), the undersigned must now determine whether there is a fact issue with respect to whether the Notes meets the requirements of Section 343.202(1)(E)(ii).

>    b.    *Section 343.202(1)(E)(ii)*

The Note evidences a total loan amount of $333,000. *See* Dkt. No. 40-1 at 2. 12 C.F.R. § 226.32(a)(1)(ii) states that, for purposes of qualifying as a high-cost home loan pursuant to Section 343.202(1)(E)(ii), "[t]he total points and fees payable by the consumer at or before loan closing" cannot exceed "8 percent of the total loan amount." Eight percent of $333,000 is $26,640. Plaintiffs presented no evidence that they paid to Defendants an amount greater than $26,640 in points and fees. In fact, Plaintiffs

presented no evidence regarding any amounts paid in points and fees. As such, there is no genuine dispute of material fact with respect to whether the Note falls under Section 343.202(1)(E)(ii). The evidence currently before the Court demonstrates that it does not.

As such, the Court should grant Defendants summary judgment on Plaintiff's Texas Finance Code claim based on the Note.

2. Section 343.202(1)(B)(ii)

Because the undersigned concluded that there was no genuine dispute of material fact with respect to whether the Note fell under Section 343.202(1)(E) – the evidence proves it does not – the undersigned will not analyze whether Section 343.202(1)(B)(ii) applies to the Note. But the undersigned must analyze whether that section applies to the First or Second Modification.

Having looked at the evidence presented, the undersigned concludes that a genuine dispute of material fact exists. Defendants presented evidence demonstrating that, at the time that the parties entered into the Note, Plaintiffs were, at the least, considering the Property as a daycare facility. *See* Dkt. Nos. 40-18, 40-19, & 40-20. But, all of Defendants' evidence is dated in 2006 or earlier, from before the First or Second Modifications were consummated. Plaintiffs state that their Property was their homestead at the time of foreclosure. Disregarding, for these purposes, the legal implications of using the word "homestead," Plaintiffs seem to be arguing that the Property was their primary residence at that time. Without evidence to the contrary, the undersigned cannot say with certainty that the Property was not Plaintiffs'

primary residence at the time they entered into the First or Second Modifications. At the least, then, a genuine dispute of material fact exists as to this element of this claim.

For the foregoing reasons, the undersigned recommends denying Defendants' Motion as to Plaintiffs' Texas Finance Code causes of action related to the First and Second Modifications and recommends granting Defendants' Motion as to those claims with respect to the Note.

## I.   Wrongful Foreclosure

To succeed on a claim of wrongful foreclosure, a plaintiff must prove the following elements: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *See Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011); *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2009, no pet.). "A claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing*, LP, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011).

In their Second Amended Complaint, Plaintiffs do not specify the basis of their wrongful foreclosure claim, and they make no allegations regarding any procedural defects or inadequate selling price. Viewing the allegations and facts in the light most favorable to Plaintiff as the nonmoving party and also drawing all reasonable inferences in Plaintiffs' favor, the undersigned concludes that Plaintiffs likely

demonstrated at least a fact issue with respect to the procedural defect – that, Defendants failed to provide the required 21-day notice before foreclosing. *See* Dkt. No. 50-1 at 43 (¶ 4). But, even if that factual issue is resolved in Plaintiffs' favor, Plaintiffs present no evidence – and in fact did not even argue – that the sales prices was grossly inadequate or that there is a causal connection between the procedural defect and the inadequate sales price.

As such, the undersigned concludes that summary judgment should be granted in Defendants' favor on Plaintiffs' wrongful foreclosure claim.

## Recommendation

Defendants' Motion for Summary Judgment on Plaintiffs' Claims [Dkt. No. 40] ("Motion") should be granted in part and denied in part as follows:

(A) with respect to Plaintiffs' negligence claims, Defendants' Motion should be granted;

(B) with respect to Plaintiffs' conversion claims, Defendants' Motion should be granted as to all Loan Agreements;

(C) with respect to Plaintiffs' common law and statutory fraud claims,

(i) those related to the Note and First Modification are barred by the statute of limitations, and Defendants' Motion should be granted as those agreements;

(ii) those related to the Second Modification are barred based on Plaintiffs' knowledge of falsity, and Defendants' Motion should be granted as to it;

(D) with respect to Plaintiffs' negligent misrepresentation claims,

(i) those related to the Note and First Modification are barred by the

statute of limitations, and Defendants' Motion should be granted as those agreements;

(ii) those related to the Second Modification present genuine disputes of material fact, and Defendants' Motion should be denied;

(E) with respect to Plaintiffs' breach of contract claims, Defendants' Motion for summary judgment should be denied;

(F) with respect to Plaintiffs' TILA claims, Defendants' Motion for summary judgment should be granted;

(G) with respect to Plaintiffs' RESPA claims, Defendants' Motion for summary judgment should be granted;

(H) with respect to Plaintiffs' Texas Finance Code claims,

(i) those related to the Note do not constitute a "high-cost home loan," and Defendants' Motion should be granted as to it;

(ii) those related to the First and Second Modification present genuine disputes of material facts as to whether they constitute "high-cost home loans," and Defendants' Motion should be denied as to them; and

(I) with respect to Plaintiffs' wrongful foreclosure claims, Defendants' Motion should be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 1, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE